# UNITED STATES DISTRICT COURT

for the
### Eastern District of Kentucky
### Lexington Division

| | | |
|---|---|---|
| Billy Caudill | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No.   14-cv-264-KKC |
| | ) | |
| Cavalry Portfolio Services, LLC | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
| CT Corporation System | ) | |
| 306 W. Main Street | ) | |
| Suite 512 | ) | |
| Frankfort, KY 40601 | ) | |
| | ) | |
| Cavalry SPV I, LLC | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
| CT Corporation System | ) | |
| 306 W. Main Street | ) | |
| Suite 512 | ) | |
| Frankfort, KY 40601 | ) | |
| | ) | |

### FIRST AMENDED CLASS ACTION COMPLAINT
### and DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      This is an action by a consumer seeking declaratory relief and damages for himself and on behalf of all similarly-situated Kentucky citizens for Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.,* which prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices, and for recovery of usurious interest imposed and collected by Defendants Cavalry Portfolio Services, LLC ("CPS") and Cavalry SPV I, LLC ("Cavalry").

2.      CPS and/or Cavalry attempted to collect interest or fees from Plaintiff Billy Caudill

that it has no legal right to recover. In particular, CPS and/or Cavalry reported false negative credit information concerning Mr. Caudill to one or more consumer reporting agencies that included unlawful interest and/or fees added to the debt. CPS and/or Cavalry reported negative information concerning Mr. Caudill and the other members of the class in order to collect a debt from him and them. These and other acts violate the FDCPA. Mr. Caudill seeks damages and declaratory relief.

## JURISDICTION

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, and the FDCPA, 15 U.S.C. §1692k(d).

## PARTIES

4.      Plaintiff Billy Caudill is a natural person who resides in Fayette County, Ky.  Mr. Caudill is a "consumer" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3).

5.      Defendant Cavalry Portfolios Services, LLC is a foreign limited partnership, which has not registered with the Kentucky Secretary of State, and is engaged in the business of purchasing debt from creditors and collecting these debts in this state and/or collecting debts on behalf of other debt collectors such as Cavalry. Cavalry's principal place of business is located in Valhalla, NY 10595.

6.      CPS is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).6.

7.      Defendant, Cavalry SPV I, LLC, is a foreign limited liability company, which has not registered with the Kentucky Secretary of State. Cavalry is engaged in the business of purchasing debt from creditors and collecting these debts from consumers in this state. Cavalry's principal place of business is located at 500 Summit Lake Drive, Suite 400, Valhalla, NY 10595.

8.      Cavalry regularly collects or attempts to collect debts owed or due or asserted to be owed or due another and is a "debt collector" within the meaning of the FDCPA, as defined by 15

U.S.C. § 1692a(6).

## FACTS

9.     On December 11, 2013, Mr. Caudill obtained a copy of his consumer credit report from Equifax Information Services, LLC.

10.     Mr. Caudill's Equifax consumer credit report includes negative credit information furnished by CPS and/or Cavalry in connection with a charged-off credit card debt originated by HSBC Bank Nevada, N.A. ("HSBC"). Mr. Caudill's Equifax consumer credit report also includes negative credit information furnished by HSBC in connection with the same debt.

11.     Mr. Caudill used the HSBC credit card exclusively for personal, family, and household purposes, therefore the HSBC debt is a "consumer debt" within the meaning of the FDCPA.

12.     Mr. Caudill's HSBC credit card account agreement gave HSBC the right to charge interest in excess of 8.00% per annum and, upon default, in excess of 21.00% per annum.

13.     Mr. Caudill's HSBC credit card account agreement gave HSBC the right to charge late fees in excess of $5.00 per month.

14.     Mr. Caudill's HSBC credit card account agreement gave HSBC the right to charge fees other than late fees, *e.g.* over-limit fees, and fees for failing to make the minimum payment due.

15.     According to the information furnished by CPS to one or more consumer reporting agencies ("CRA"), Mr. Caudill's HSBC Account became delinquent in October of 2010 and HSBC assigned the debt to Cavalry in November of 2011.

16.     Upon information and belief, HSBC charged off Mr. Caudill's credit card account in or about May 2011.

-3-

17.     Upon information and belief, $559.00 was the amount due on the debt on the date that HSBC charged off the debt.

18.     Upon information and belief, the $559.00 due on the debt included contractual interest and fees assessed and accrued by HSBC.

19.     Upon information and belief, after charging off Mr. Caudill's credit card account, HSBC did not accrue or assess any interest on the debt between the date HSBC charged off and the date it sold the debt.

20.     Upon information and belief, for prudent business reasons, HSBC affirmatively waived its right to accrue any and all interest and fees on Mr. Caudill's credit card account after charging it off. *See McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 526 (E.D. Mich. 2013) (finding that the benefits of affirmatively waiving the right to interest include tax benefits, reduction in loan-loss reserves, and the release from the statutory obligation to send periodic statements).

21.     Upon information and belief, HSBC sold Mr. Caudill's charged off credit card debt to Cavalry or Cavalry's assignor in November 2011.

22.     Upon information and belief, Cavalry owns Mr. Caudill's HSBC debt and CPS is a servicer of the debt on behalf of Cavalry.

23.     Upon information and belief, $559.00 was still the amount due on the debt on the date of sale. That is, the amount of the HSBC debt was the same amount on the day that HSBC charged off the debt as it was on the date that Cavalry acquired the debt.

24.     Upon information and belief, Cavalry paid no more than five cents on the dollar to purchase the HSBC debt, or no more than $28.00.

25.     HSBC's affirmative waiver of interest is binding on CPS and Cavalry as purchasers

or assignees of the debt. *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 456 (6th Cir. 2014).

26.     According to the information furnished by CPS to one or more CRA's concerning Mr. Caudill and the HSBC debt, the amount of the debt totaled $645.00 as of December 2013.

27.     Upon information and belief CPS and/or Cavalry extra-judicially assessed and accrued prejudgment interest on Mr. Caudill's HSBC credit card debt under KRS 360.010.

28.     Upon information and belief, CPS and/or Cavalry began assessing and accruing interest on Mr. Caudill's HSBC debt prior to demanding payment of the debt from him and without a valid judgment awarding it the right to prejudgment interest under KRS 360.010 on the debt.

29.     Neither CPS nor Cavalry had a right to extra-judicially assess and accrue prejudgment interest under KRS 360.010 on Mr. Caudill's HSBC credit card debt.

30.     In the alternative, upon information and belief, CPS and/or Cavalry assessed interest and/or fees on Mr. Caudill's HSBC credit card debt on some, yet-to-be-determined basis other than KRS 360.010.

31.     Upon information and belief, neither CPS nor Cavalry had a statutory or contractual right to assess and accrue interest on Mr. Caudill's HSBC credit card debt as reflected in his Equifax consumer credit report.

32.     The negative credit information CPS and/or Cavalry furnished to one or more CRA's concerning Mr. Caudill and the HSBC debt is false because it includes the assessment and accrual of interest and/or fees on the HSBC debt that neither CPS nor Cavalry had any legal right to assess, accrue, or collect.

33.     CPS and/or Cavalry reported negative credit information on Mr. Caudill's consumer report for purposes of collecting a debt from him. ("[R]eporting a debt to a credit

reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'" *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002)).

34.     Upon information and belief, CPS and/or Cavalry is furnishing similar false negative credit information to consumer reporting agencies concerning hundreds or thousands of Kentucky consumers and charged-off credit card debt purchased by Cavalry and serviced by CPS.

35.     CPS and Cavalry violated multiple sections of the FDCPA by assessing and accruing interest and/or fees on Mr. Caudill's HSBC credit card debt that neither had a statutory or contractual right to assess, accrue, or collect, and by furnishing false negative credit information concerning Mr. Caudill and the HSBC credit card debt to one or more consumer reporting agencies.

## CLASS ALLEGATIONS

36.     Plaintiff Billy Caudill brings this action individually and as a class action on behalf of all persons in the Commonwealth of Kentucky similarly situated.

37.     These persons comprise the following:

**Class:** All Kentucky citizens against whom Defendants Cavalry Portfolio Services, LLC ("CPS") and/or Cavalry SPV I, LLC ("Cavalry"), or their agents, employees, or representatives, within one year of the date of filing this complaint:

**(a)**     furnished negative credit information to one or more consumer reporting agencies concerning the class member in connection with a charged-off credit card debt purchased by CPS or Cavalry; and

**(b)**     assessed and added interest and/or fees to the amount to the debt in the negative credit information concerning the charged-off credit card debt that CPS and/or Cavalry furnished to one or more consumer reporting agencies.

38.     This action seeks the maximum statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2), be awarded to Plaintiff and all members of the class for CPS and/or Cavalry's violation of the FDCPA.

39.     This action also seeks declaratory relief from this Court declaring that (1) CPS and Cavalry have no legal right to accrue and assess prejudgment interest on charged-off credit card debts without a duly entered judgment awarding CPS or Cavalry prejudgment interest on the debt; and (2) CPS and Cavalry have no legal right to accrue assess prejudgment interest on charged-off credit card debts prior to demanding payment of the debt.

39.     The class so represented by Plaintiff Billy Caudill in this action, and of which he himself is a member, consists of those persons defined above and is so numerous that joinder of individual members is impracticable.

40.     Plaintiff's claims are typical of the claims of the class.

41.     There are common questions of law and fact in this action that relate to and affect the rights of each member of the class, and the relief sought is common to the entire class. In particular, all class members have the same issue of law in common: whether CPS and/or Cavalry has collected, attempted to collect, or sued to collect usurious interest from each member of the class.

42.     There is no known conflict between Plaintiff and any other members of the class with respect to this action, or with respect to the claims for relief herein set forth.

43.     Plaintiff is the representative party for the class and is able to, and will, fairly and adequately protect the interest of the class.

44.     Plaintiff's attorneys are experienced and capable in the field of consumer rights, including FDCPA violations.

45.     Plaintiff's attorneys have successfully represented other claimants in similar litigation.

46.     The action is properly maintained as a class action in that the prosecution of separate actions by individual class members creates a risk of individual adjudications that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interest.

47.     This action is properly maintained as a class action because the prosecution of separate actions by individual members of the class would create risk of varying individual adjudications, which would establish incompatible standards of conduct for Defendant.

48.     This action is properly maintained as a class action inasmuch as the questions of law and fact common to the class members predominate over any questions affecting only individual members; a class action is superior to other methods available for the efficient adjudication of the controversy; the relief sought by all members of the class will be effective and appropriate for the entire class; and all members of the class have a right to damages or other relief that may be readily computed in each case or otherwise readily determined.

49.     The identity of each individual member of the class can be ascertained from the books and records maintained by Defendant.

50.     Because many of the persons who comprise the class in this case may not be aware of their rights, or may not be in a financial position to readily assert their rights, and because relegation of their claims to individual actions would result in an unreasonable multiplicity of suits and a corresponding burden on this and other courts, a class action is far superior to all other methods for a fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### Violations of the Fair Debt Collection Practices Act

51.    The above-described actions by CPS and/or Cavalry constitute violations of the Fair Debt Collection Practices Act.

52.    Defendants Cavalry Portfolio Services, LLC and Cavalry SPV I, LLC's, violations of the FDCPA include, but are not limited to:

**(a)**  CPS and/or Cavalry violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692f and/or one or more subsections of each statute by furnishing false credit information to one or more consumer reporting agencies concerning a debt owed by Mr. Caudill and debts owed by the members of the class. The information furnished by CPS and/or Cavalry was false because CPS and/or Cavalry assessed and accrued interest and/or fees to the amount of the debt that neither CPS nor Cavalry had a statutory or contractual right to assess and accrue

### Declaratory Relief

53.    The allegations above establish that an actual case and controversy exists between Plaintiff and Defendants concerning the interest and/or fees that CPS and/or Cavalry improperly assessed and accrued on Plaintiff Caudill's HSBC credit card debt and with those class Plaintiffs similarly situated as alleged.

54.    Plaintiff Caudill and the class Plaintiffs ask the Court to declare that CPS and/or Cavalry's practice of assessing and accruing interest and/or fees on charged-off credit card debts and adding this interest and/or fee to the amount of the debts in information furnished about the debt to consumer reporting agencies is unlawful and violates the FDCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Billy Caudill requests on his behalf and on behalf of the class Plaintiffs as alleged that the Court grant relief as follows:

1. Declare that CPS and/or Cavalry's practice of assessing and accruing interest and/or fees on charged-off credit card debts and adding this interest and/or fee to the amount of the debts in information furnished about the debt to consumer reporting agencies in unlawful and violates the FDCPA and enjoin CPA and/or Cavalry from such practice;

2. Award the maximum amount of statutory damages for each member of the class provided under 15 U.S.C. §1692k;

3. Attorney's fees, litigation expenses and costs;

4. Actual damages;

5. A trial by jury; and

6. Such other relief as may be just and proper.

Respectfully submitted,

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Ave.
Unit #4
Tel:    (502) 473-6525
Fax:    (502) 473-6561
james@kyclc.com

**James McKenzie**
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Ave.
Unit #4
Louisville, KY 40207
Tel:    (502) 371-2179
Fax:    (502) 257-7309
jmckenzie@jmckenzielaw.com